## A00A0738. MOON v. THE STATE.
### (535 SE2d 771)

ANDREWS, Presiding Judge.

Pursuant to the grant of his motion for out-of-time appeal, Joseph Lee Moon appeals from the denial of his motion for new trial after his conviction for theft by taking. Moon was acquitted of the charge of kidnapping.

1. Moon challenges the sufficiency of the evidence regarding theft by taking in his third enumeration, and we consider it first.

> "On appeal[,] the evidence must be viewed in the light most favorable to support the verdict, and [Moon] no longer enjoys a presumption of innocence; moreover, an appellate court determines evidence sufficiency and does not weigh the evidence or determine witness credibility. . . . [T]he test established in *Jackson [v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979)] is the proper test for us to use when the sufficiency of the evidence is challenged, whether the challenge arises from the overruling of a motion for directed verdict or the overruling of a motion for new trial based upon alleged insufficiency of the evidence." (Punctuation omitted.) [Cit.]

---

*Carter v. State*, 235 Ga. App. 260 (1) (510 SE2d 539) (1998).

So viewed, the evidence was that Moon, then 45 years old and a heroin addict since the age of 18, was undergoing daily methadone treatment for his addiction. He daily drove from Athens to Doraville to a clinic to get his medication. On August 14, 1998, Moon was on the way to get his methadone when he was involved in an automobile wreck in Lawrenceville around 11:00 a.m. Because he had overslept, he was already overdue for his medication and called his son from the other accident victim's cell phone. Although the son agreed to come and pick Moon up, he did not. The investigating police officer took Moon to the Quick Trip (QT) on Sugarloaf Parkway to wait for his wife, who said she would come.

Maschas, the manager of the QT, first noticed Moon waiting outside near the pay phones when he arrived for his shift at 2:00 p.m. Maschas eventually went outside and asked Moon if he needed help, but Moon told him he was waiting for a phone call. Moon later called his wife again and discovered that she had gotten lost on her way to pick him up.

Around 4:00 p.m., 17-year-old Leslie Grace stopped at the QT for gas. After getting gas, Grace was unable to get the car restarted. At that point, she saw her father's small Ford pickup truck go into the shopping center across the street and she walked over to get his help. Lewis Grace then drove his truck across the street and parked it front bumper to rear bumper with Leslie's car while he attempted to fix the problem. Leslie's five-year-old half-sister, Kristine, was sitting in the rear fold-down seat of her father's pickup, and, initially, Leslie sat in the front seat while her father worked. Because it was hot, the truck was running with the air conditioner on for Kristine. Mr. Grace then summoned Leslie to try to start her car, which still would not start. As Leslie got out of the car, she noticed the truck was farther from her car than it had been and mentioned this to her father.

Moon, who had begun having physical symptoms of withdrawal, including vomiting, saw the pickup, and, as he described the event: "I said, I got to have my medication. So I got in the truck, and I noticed the car in front of the truck with the hood raised. I didn't know whose it was, and I wasn't even concerned. I just wanted to get my medication."

Mr. Grace ran after the truck, banging on the side and yelling. The truck then made a u-turn and started to accelerate. Mr. Grace jumped into the truck bed and continued pounding on the truck and saying his daughter was inside. Although Moon heard a thump, he did not stop until he had gone about 100 yards down the street and looked into the back and saw Kristine. After Moon stopped the truck and got out, Mr. Grace jumped out of the truck bed and got between Moon and the truck. Moon told Mr. Grace, "I thought it was my

truck." As he testified, "I didn't know what else to say. I knew I had did something wrong. I knew it was wrong for trying to take the man's truck, but I was so sick, and it felt like my guts was coming out. I had to try to get to the clinic to get my medication." Mr. Grace told Moon to leave, which Moon did, walking toward Highway 316. Moon was later seen getting into a tractor-trailer by Maschas who told the driver about the incident. The driver made Moon get out, and Maschas saw Moon going into nearby woods. He was later captured by police.

The evidence of theft by taking was legally sufficient. *Jackson v. Virginia*, supra; *Kunis v. State*, 238 Ga. App. 323, 324 (2) (518 SE2d 725) (1999).

2. Moon's second enumeration is that trial counsel was ineffective on the sole ground that he failed to reserve objections to the jury charge. Appellate counsel specifically disavowed during the motion for new trial hearing that he was contending that trial counsel was ineffective because he failed to make a written request that the trial court charge on justification as Moon's sole defense to theft by taking.

Here, it is argued only that, since trial counsel is authorized to reserve his challenges to a jury charge until making a motion for new trial or appeal, pursuant to, e.g., *Gaither v. State*, 234 Ga. 465, 466 (2) (216 SE2d 324) (1975), it is per se ineffective assistance of counsel not to do so. No other authority for this proposition is presented, and we know of none. Further,

> [t]here are two components to a claim for ineffective assistance of counsel. "First, the defendant must show that counsel's performance was deficient. Second, the defendant must show that the defense was prejudiced by the deficient performance. Both components must be shown before we can find that the conviction resulted from a breakdown in the adversary process that renders the result unreliable."

*Whitner v. State*, 202 Ga. App. 608 (415 SE2d 52) (1992).

Even assuming that failure to reserve objections could be equated with a deficiency in performance, appellate counsel for Moon has totally failed to point out any errors in the trial court's charge that would illustrate the necessary prejudice. No error has been shown. *Williams v. State*, 214 Ga. App. 106 (446 SE2d 789) (1994); *Concepcion v. State*, 205 Ga. App. 138, 139 (421 SE2d 554) (1992); see *Bell v. State*, 226 Ga. App. 271, 275 (7) (f) (486 SE2d 422) (1997).

3. Finally, Moon contends that the trial court erred in not giving the jury a charge, without request, on Moon's sole defense of justification regarding the theft by taking charge, relying on *Tarvestad v. State*, 261 Ga. 605 (409 SE2d 513) (1991).

Although trial counsel was not called to testify at the motion for new trial hearing, his comments during the trial reflected that his trial strategy was to acknowledge that Moon took the truck, as Moon's testimony set out above reflects, and attempt to persuade the jury that Moon did not intend to kidnap the child, the more serious charge. As reflected by the jury's acquittal of Moon on the kidnapping charge, the strategy was successful. Realizing that he cannot criticize trial counsel for strategic decisions such as this, *Dewberry v. State*, 271 Ga. 624, 625 (2) (523 SE2d 26) (1999), appellate counsel contends the court should have, nonetheless, charged on justification.

" 'Whether the evidence presented is sufficient to authorize the giving of a charge is a question of law.' (Citation omitted.) *Davis v. State*, 269 Ga. 276, 279 (3) (496 SE2d 699) (1998)." *Heath v. State*, 240 Ga. App. 492, 493 (2) (522 SE2d 761) (1999).

In *Tarvestad*, the husband, convicted of being an habitual violator, had orally requested the charge on justification where he had been driving his pregnant wife, in labor and unable to drive, to the doctor. No other options for Tarvestad were suggested by the evidence. Here, by contrast, Moon had been offered help by Maschas, which he had refused, and had access to a phone which he could have used to call 911. Also, Moon's trial counsel chose to concentrate on gaining an acquittal of the kidnapping charge, for which he filed a request to charge on the defense of accident, which was given. He and Moon opted to acknowledge the taking of the truck.

This situation is more similar to and controlled by *Odum v. State*, 220 Ga. App. 263 (469 SE2d 394) (1996). There, Odum was convicted of driving as an habitual violator after he allowed his son, too young to drive, to drive the car while he was a passenger. As Odum, his son, and his nephew, also too young to drive, approached a roadblock, the two young men got out of the car, and Odum proceeded to the roadblock. He argued that, as a matter of law, he was justified in doing so. This argument was rejected because Odum's own actions had put him in the situation where the choice arose. Similarly, here, Moon's decision to take the truck was not the only option available to him. Further, his own addiction, his failure to leave home earlier, and the failure of his relatives to come for him after repeated calls created the situation in which he made his choice.

There was no error in the trial court's failure to sua sponte charge on justification under these circumstances.

*Judgment affirmed. Ruffin and Ellington, JJ., concur.*

DECIDED JUNE 12, 2000

*Lenzer & Lenzer, Robert W. Lenzer, Thomas P. Lenzer*, for appellant.

*Daniel J. Porter, District Attorney, R. Keith Miles, Assistant District Attorney*, for appellee.