**THIRD DIVISION**
**ANDREWS, P. J.,**
**DILLARD and MCMILLIAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

June 26, 2013

# In the Court of Appeals of Georgia

A13A0587. HOSLEY v. THE STATE.

ANDREWS, Presiding Judge.

Darius Hosley appeals after a jury found him guilty of kidnapping, aggravated assault, false imprisonment, possession of a gun during the commission of a crime, fleeing from a police officer, carrying a gun without a license, and simple battery. Hosley contends that counsel was ineffective in failing to request a jury charge of not guilty by reason of insanity; that the trial court should have charged the jury sua sponte on not guilty by reason of insanity; that the false imprisonment conviction should have been merged with the kidnapping conviction; and, that the trial court erred in allowing certain testimony from one of the State's witnesses. After reviewing the record, we conclude there was no error, and affirm.

The evidence at trial, viewed in the light most favorable to the jury's verdict, was that Holsey and his wife Latisha had been separated for some time when she agreed to meet him and let him see their baby, who was two months old. Latisha was afraid of Holsey because he had previously attacked her when they were living in Virginia while he was in the Navy. Holsey was AWOL at the time and Latisha was two months pregnant. Immediately after the attack, Latisha left Virginia and moved back to Atlanta.

When the baby was two months old, Latisha told Holsey that he could see the baby. She decided to meet him at a mall because she didn't think Holsey would "try anything" in a public place. Her family was nearby during the meeting in case Holsey became violent.

Latisha met Holsey in the food court and he became angry when she told him that she would not leave with him. He pulled out a gun and threatened to hurt her if she did not come with him. Latisha's family saw what was happening and stopped them. Latisha's sister tried to take the baby but Holsey pointed the gun at her forehead and told her to "get away." During this confrontation, Holsey released Latisha's arm and she was able to run outside, still holding the baby. At some point, Latisha and the baby were ducking between cars, with Holsey firing his gun

randomly. Holsey found Latisha and the baby, pointed the gun at them and said "don't think I won't." Holsey forced Latisha into the car at gunpoint. As they were driving away, police cars arrived and eventually surrounded the car.

An officer testified that Holsey did not stop his car when ordered to do so and ran into one of the police cars that was blocking the way. The State also submitted evidence of a car that was parked in the parking lot of the mall with a bullet hole through the door.

Holsey testified at trial, stating that he suffered physical and psychological problems as a result of his service in the Navy. He said that he saw combat in Afghanistan and Iraq. He could not explain how he saw combat in those countries when he served in the Navy and was on board a ship during that time. Holsey also stated that he had seen his best friend killed on board the ship and had to clean up the blood.

Holsey denied pointing a gun at Latisha while they were in the mall, stating Latisha's family accosted him when they got up to leave. He said that he felt threatened and that's when he fired the shots in the air. He claimed that Latisha got in the car willingly and he never threatened her.

3

A clinical psychologist testified that she diagnosed Holsey with post traumatic stress disorder (PTSD). The psychologist stated that Holsey's worst experiences were the ones he experienced in Iraq. She stated that this diagnosis was based solely on Holsey's "self report." Based on this, she testified that she "[did not] think he was responsible [for the offenses] at the time." When asked if she were informed that what Holsey told her about his military experiences was not true, the psychologist stated that her opinion would change if she found out that he had not had combat experience and had not experienced a traumatic event.

The State called a shipmate of Holsey's who testified that the ship never went to Iraq or Afghanistan, was never in combat, and was never attacked. A representative from the VA stated that Holsey had no land or ground service, only sea duty. Holsey's post-deployment assessment showed that he stated that he was never in combat duty, did not see anyone wounded or killed, and never felt in grave danger. With respect to questions about possible PTSD, Holsey responded in the negative to each of those questions.

A forensic psychologist testified that he examined Holsey and found him to be responsible for his actions at the time of the crimes. The psychologist also testified that Holsey's self report of his history proved to be "highly unreliable." For instance,

4

he claimed to have been diagnosed with PTSD at a VA facility in Nashville. When the records were sent to the psychologist, however, the diagnosis was "malingering."

1. In his first enumeration of error on appeal, Holsey asserts that trial counsel was ineffective in not requesting a jury charge of "not guilty by reason of insanity." In order to prevail on a claim of ineffective assistance under *Strickland v. Washington*, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984), Holsey must show both that counsel was deficient and that, but for the unprofessional errors, there is a reasonable probability that the trial's outcome would have been different. *Williams v. State,* 277 Ga. 853, 857 (596 SE2d 597) (2004). If an appellant fails to meet either prong of the *Strickland* test, it is not incumbent upon this Court to examine the other prong. *Battles v. State,* 290 Ga. 226, 229 (719 SE2d 423) (2011). In reviewing a trial court's ruling on a claim of ineffective assistance of counsel, we give deference to the trial court's factual findings, which are upheld on appeal unless clearly erroneous; and, we review de novo the trial court's legal conclusions. *Williams,* supra at 857.

Defense counsel testified at the hearing on the motion for new trial that he had a "mixed bag for defense." He said that he intended to raise the issues of mental illness, and that Holsey felt threatened when Latisha's family stopped him in the mall

5

and thought his actions were reasonable. Therefore, he asked for and received jury charges on self-defense and justification.

This was reasonable trial strategy, especially in light of the evidence at trial which did not support a charge on not guilty by reason of insanity. See *Jackson v. State,* 306 Ga. App. 33, 39 (701 SE2d 481) (2010) ("Generally, counsel's decision as to which theory of defense to pursue is considered strategic and cannot serve as the basis for an ineffective assistance claim."). In addition, given the evidence at trial, there is no reasonable probability that, had counsel requested this charge, the outcome of the trial would have been different. Although Holsey's psychologist testified that she believed he was not responsible for his actions at the time of the crime, she acknowledged that her diagnosis was based on Holsey's self report, particularly "what happened in Iraq," which was totally discredited by later testimony.

2. Holsey argues that the trial court should have charged the jury *sua sponte* on not guilty by reason of insanity. Holsey cites to OCGA § 17-7-131 (b) (1) (C) as authority. But that Code section provides that the court shall charge the jury on this defense "[i]n all cases in which the defense of insanity is interposed." Here, the defense of insanity was not interposed. Further, this was not a sole defense at trial, thus requiring a charge absent a request. See *Stevens v. State*, 267 Ga. 36, 37 (472

6

SE2d 426) (1996). For these reasons and also the reasons set forth in Division 1, above, we find there is no merit to this enumeration.

3. Next, Holsey claims that the trial court erred in not merging the false imprisonment and kidnapping convictions. We disagree.

Count 1 of the indictment charged Holsey with kidnapping by abducting and "steal[ing] away" Latisha; Count 6 of the indictment charged Holsey with false imprisonment by confining and detaining Latisha.

"In determining whether a merger has occurred, the first question we must resolve is whether the different offenses are proven with the same facts. If one crime is complete before the other takes place, the two crimes do not merge." (Punctuation and footnotes omitted). *Scales v. State*, 310 Ga. App. 48, 57 (712 SE2d 555) (2011). In this case, the kidnapping occurred when Holsey pulled out a gun and forced Latisha and the baby to leave the mall with him. After Latisha escaped and hid behind cars in the parking lot, Holsey found her, pointed the gun at her, threatened her, and again forced her to go with him to his car. He then put her in the car and forced her to stay there. These occurrences were separate in time and proven with separate facts. See *Scales*, supra.

4. Holsey also claims that the trial court erred in allowing the State's witness to testify as a "conduit" for a Veteran's Administration psychiatrist who did not testify at trial. Dr. Hughey testified as a rebuttal witness after Holsey testified that he received treatment for PTSD at the VA facility in Nashville. Dr. Hughey noted that Holsey was diagnosed "with malingering" at the VA facility. There was no error in allowing the testimony.

"When an expert personally observes data collected by another, the expert's opinion is not objectionable merely because it is based, in part, on the other's findings, and even when such testimony is based on hearsay, the lack of personal knowledge does not result in exclusion of the expert's opinion but merely presents a jury question as to the weight it is to be given." *Treadwell v. State*, 285 Ga. 736, 742 (684 SE2d 244) (2009), rev. on other grounds, *Clay v. State*, 290 Ga. 822, 838 (725 SE2d 260) (2012).

Further, this testimony was cumulative of other properly admitted evidence; specifically, Holsey's discharge papers which stated that "[i]t is the opinion of the treatment team that any presentation of mental illness was malingered." See *McNaughton v. State*, 290 Ga. 894, 900 (725 SE2d 590) (2012).

*Judgment affirmed. Dillard and McMillian, JJ., concur.*

8