**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER and RAY, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**October 28, 2013**

# In the Court of Appeals of Georgia

A13A1165. ISENHOWER v. THE STATE.

RAY, Judge.

After a jury trial, Karen White Isenhower was convicted of loitering upon school premises (OCGA § 20-2-1180) and criminal trespass (OCGA § 16-7-21 (b)).[1] She appeals, arguing that the evidence is insufficient to sustain her conviction for loitering upon school premises, that she received ineffective assistance of counsel, and that the trial judge erred in refusing to give a requested jury charge and in improperly commenting on the evidence. For the reasons that follow, we reverse Isenhower's conviction for loitering upon school premises and affirm her conviction for criminal trespass.

---

[1] The jury acquitted Isenhower of an another count of criminal trespass, and she received a directed verdict on two additional counts of loitering upon school premises.

We view the evidence in the light most favorable to the verdict. *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (99 SCt 2781, 61 LE2d 560) (1979). So viewed, the evidence shows that Isenhower, a Heard County Commissioner, was also the mother of a student at Heard County High School. As a commissioner, she had filed complaints with Benjamin Hyatt, the superintendent of the Heard County schools, and with other entities, which alleged that Heard County High School engaged in improper child labor, as well as improper asbestos removal and disposal. After a Department of Labor investigation found no child labor violations, Hyatt sent Isenhower a letter saying that all her allegations were incorrect and that no action would be taken.

Isenhower came to the high school's main office on May 1, 2009, looking for the principal, Russell Sowell, and for State School Superintendent Cathy Cox, who was there to tour a new school building that was under construction. Isenhower wanted to talk with Cox about the child labor and asbestos disposal issues. The school was not issuing visitor passes on this day, and Isenhower did not have an appointment to see Cox. The receptionist told Isenhower that she did not know where Cox and Sowell were. She testified that she did not tell Isenhower that visitors were not allowed that day. Isenhower then left the old school building and went to the

2

building that was under construction, where she found Cox, Sowell, and the school superintendent, Hyatt, on the third floor. Sowell asked her to leave, and she did.

Sowell then called the assistant principal, Christopher Edwards, to report an "unauthorized visitor" – Isenhower – in the building. Edwards found her on the second floor of the new building. He told her that she was not supposed to be there and that she needed to leave. She told him that she was supposed to be there and did not need to leave. It is undisputed that when he again told her to leave, she did so. As she crossed the parking lot with Edwards, he told a police officer who had been called because of Isenhower's presence that she needed to leave. The officer told Isenhower to leave. She then left campus in her vehicle, which she moved across the street to a nearby restaurant, where she remained until Cox left.

Because of the above-described events, Isenhower was charged and convicted under OCGA § 20-2-1180, was sentenced to a 12-month probation, and was given 200 hours of community service.

1. Isenhower contends that the evidence was insufficient to sustain her conviction under OCGA § 20-2-1180. The indictment under which Isenhower was charged and convicted on this count states that she "did willfully fail to remove

herself from [school] premises after being requested to do so by Assistant Principal Chris Edwards."

OCGA § 20-2-1180, in pertinent part, provides that

(a) It shall be unlawful for any person to *remain* upon the premises or within the school safety zone . . . of any public or private school in this state . . . when that person does not have a legitimate cause or need to be present thereon. Each principal or designee of each public or private school in this state shall have the authority to exercise such control over the buildings and grounds upon which a school is located so as to prohibit any person who does not have a legitimate need or cause to be present thereon from *loitering* upon such premises. . . .

(b) Any person who: (1) *[i]s present* upon the premises or within the school safety zone of any public or private school in this state *and willfully fails to remove himself or herself from the premises after the principal or designee of such school requests him or her to do so*; or (2) [f]ails to check in at the designated location . . . shall be guilty of a misdemeanor of a high and aggravated nature.

(Emphasis supplied).

It is undisputed that Isenhower was present on school premises on the date listed in the indictment, and Sowell, the principal, testified that she checked in at the school's front office. Isenhower contends that the State failed to carry its burden of

4

showing that she "'willfully fail[ed] to remove' herself from the school premises once asked to do so." We agree.

Viewed appropriately, *Jackson*, supra, the State has failed to prove its case. The statute at issue here, OCGA § 20-2-1180, has rarely been cited by our appellate courts and has never been substantively construed. See, e. g., *Walker v. State*, __ Ga. App. __ (1) (Case No. A13A0444, decided July 12, 2013) (Branch, J., dissenting); *In the Interest of M. P.*, 279 Ga. App. 344, 346 (2) (631 SE2d 383) (2006). Thus, in construing OCGA § 20-2-1180, "we apply the fundamental rules of statutory construction that require us to construe the statute according to its terms, to give words their plain and ordinary meaning." (Citation and punctuation omitted.) *Doe v. State*, 290 Ga. 667, 668 (725 SE2d 234) (2012). "To determine the legislative intent of a statute, we begin with the literal text; where the literal text of a statute is plain and does not lead to absurd or impracticable consequences, we apply the statute as written without further inquiry." (Citation omitted.) *Hill v. State*, 309 Ga. App. 531, 533 (710 SE2d 667) (2011).

Here, the literal text of the statute is plain, and we must apply it as written. In pertinent part, OCGA § 20-2-1180 (a) provides that "[i]t shall be unlawful for any person to *remain* upon the premises" and gives the principal or a designee, absent the

5

defendant's legitimate need or cause to be present, the authority to prevent "*loitering* upon such premises." (Emphasis supplied).

Edwards estimated that from the time he first spoke with Isenhower on the second floor and walked out of the building with her, two to four minutes had elapsed. He testified that his conversation with Isenhower and her conversation with the police officer took place only seconds apart, and then she left.

Because we must construe statutes so as to avoid absurd results, *Hill*, supra at 533, it is logical that upon being asked to leave by Edwards, Isenhower could not simply vanish into thin air, "disapparating" like a character in one of J. K. Rowling's "Harry Potter" novels. (Isenhower was, after all, at Heard County High School, not Hogwarts.) Rather, before running afoul of the statute and violating its prohibition on any willful failure to remove herself, OCGA § 20-2-1180 (b) (1), Isenhower first had to be given some reasonable amount of time to remove herself from the second floor of the building, reach her vehicle in the parking lot below, and drive off the school grounds. See generally *Pressley v. State*, 269 Ga. App. 143, 145 (1) (c) (603 SE2d 699) (2004) (in the context of criminal trespass, OCGA § 16-7-21 (b), to sustain a conviction, the person charged must be given a "reasonable amount of time" to leave and must fail to do so); *Hall v. State*, __ Ga. App. __ (3) (744 SE2d 833) (2013) (in

6

the context of loitering, OCGA § 16-11-36, courts have considered the length of time a defendant was present on the premises as a factor in determining guilt) and *Hubbard v. State*, 311 Ga. App. 671, 673 (1) (716 SE2d 777) (2011) (same).

The undisputed testimony shows that Isenhower spent approximately two to four minutes walking from the second floor of the building to the parking lot. No testimony indicates that she intentionally delayed in driving off school premises, nor does any testimony show that she resisted leaving.

While, on appeal, we neither weigh the evidence nor determine witness credibility, we do determine whether *any rational jury* could have found the essential elements of the crime beyond a reasonable doubt. *Jackson*, supra. Here, no rational jury could find that Isenhower remained or loitered upon the premises to such an extend that she willfully or intentionally failed to remove herself in violation of the statute. Isenhower's conviction pursuant to OCGA § 20-2-1180 must be reversed.

2. Isenhower also was convicted of criminal trespass for her entry onto school grounds on February 3, 2010, pursuant to OCGA § 16-7-21 (b) (3), which provides that "[a] person commits the offense of criminal trespass when he or she knowingly and without authority: [] Remains upon the land or premises of another person . . .

after receiving notice . . . to depart." She was sentenced to 12 months of probation and 200 hours of community service for this offense.

Isenhower argues that the trial court erred in failing to instruct the jury on justification as to this charge.[2] She bases her argument on appeal on OCGA § 16-3-20 (6), which provides that "[t]he fact that a person's conduct is justified is a defense to prosecution for any crime based on that conduct. The defense of justification can be claimed: . . . In all other instances which stand upon the same footing of reason and justice as those enumerated in this article."

Viewed appropriately, *Jackson*, supra, the evidence is undisputed that Isenhower was on campus on February 3, 2010, despite previously having been banned via an August 2009 letter that stated that she "should not be on campus or at any school sponsored event unless you have advance written authorization from the Superintendent of Schools or his designee." No testimony was presented that Isenhower was given such written authorization. Rather, Isenhower argues that her presence on campus was justified because school administrators had verbally agreed

---

[2] Isenhower also alleges error as to the trial court's refusal to charge the jury on justification in connection with the loitering upon school premises charge under OCGA § 20-2-1180. Because in Division 1, supra, we found the evidence insufficient to sustain that conviction, we need not address her contention of error on this point.

8

to meet with her and her son at the school, and because the purpose of the meeting was to discuss her son's welfare. School officials testified that although they had met with Isenhower off-campus on February 2, 2010, they had not invited her to attend any on-campus meeting on February 3, 2010.

At trial, Isenhower's counsel orally requested a jury charge on justification, which the trial court denied. Generally, where no written request for a jury charge has been filed, the failure to give that charge is not error. "The trial court must charge the jury on the defendant's sole defense, even without a written request, if there is some evidence to support the charge." (Punctuation and footnote omitted.) *Jones v. State*, 315 Ga. App. 688, 689 (727 SE2d 512) (2012). Thus, the question before us is whether the affirmative defense of justification that Isenhower wished to assert was authorized by the evidence. This is a question of law. *Brower v. State*, 298 Ga. App. 699, 702 (1) (680 SE2d 859) (200). "With a legal affirmative defense, the accused admits the elements of the crime, but seeks to justify, excuse, or mitigate by showing no criminal intent[.]" (Citation and punctuation omitted.) Id.

In her argument, Isenhower relies on *Tarvestad v. State*, 261 Ga. 605 (409 SE2d 513) (1991), in which our Supreme Court found that the defendant was justified in driving without a license because he was taking his pregnant wife to the doctor

9

after the doctor had told him to do so and had instructed that his wife not drive. Id. at 606. Our Supreme Court reasoned that the trial court erred by not charging the jury on the defendant's sole defense of justification because the evidence indicated that a jury could have found that the defendant's driving without a license stood on "'the same footing of reason and justice'" as other provisions of the justification statute. Id., quoting OCGA § 16-3-20 (6). Those other provisions, at OCGA § 16-3-20 (2), (3), and (4), permit a justification defense for "a government employee's reasonable fulfillment of his duties, a parent's reasonable discipline of a child, and a person's reasonable conduct in performing a citizen's arrest." *Tarvestad*, supra.

However, in a later case in which our Supreme Court denied certiorari, this Court determined that in cases where the high court found that a justification charge was appropriate, a

> common thread in all of the examples noted by the Supreme Court is that the actor had a *duty* to act in regard to others. . . . We find it highly unlikely that, absent an *immediate* need for action, a justification charge would be authorized. A premise underlying all the defenses specified in OCGA § 16-3-20 is that the defendant faced circumstances created by external events that *demanded prompt, if not immediate, action*.

(Citations omitted; emphasis supplied.) *Brower*, supra at 705 (1). See *Jones*, supra at 690-691 (no justification charge required where defendant knew his lane would end and sped up in order to merge, but did not testify that he accelerated to 103 miles per hour because he had no safer option); *Moon v. State*, 244 Ga. App. 443, 444 (1), 446 (3) (535 SE2d 771) (2000) (no justification charge required where, in a non-emergency situation, a drug addict undergoing physical symptoms of withdrawal stole a truck so he could get to a clinic for medication, when he instead could have asked bystanders for help or called 911); *Odum v. State*, 220 Ga. App. 263, 263-264 (469 SE2d 394) (1996) (no justification charge required where defendant's own actions, in a non-urgent situation, led him to be one of three unlicensed occupants of a car when he chose to drive that car to a police roadblock).

Here, Isenhower was banned from campus through her own actions, and no evidence indicates that her need to advocate for her son's welfare was so immediate that she was prevented from double-checking with school authorities to ensure that she had permission to be on campus, particularly given the ban's requirement that she have written permission. Thus, "[e]ven though [Isenhower] asserts that justification was her sole defense, it is not error to refuse a justification charge when there is no evidence to support it." (Citations omitted.) *Brower*, supra at 706 (1).

11

3. Isenhower contends that she received ineffective assistance of counsel because her trial lawyer failed to call certain witnesses and to conduct full interviews relevant to her conviction for remaining upon school premises pursuant to OCGA § 20-2-1180. She also contends that the trial court improperly commented that the evidence did not support her justification defense in regards to the charge of remaining upon school premises pursuant to OCGA § 20-2-1180. Because we found the evidence insufficient to sustain her conviction on this count in Division 1, supra, we need not reach these enumerations of error.

*Judgment affirmed in part and reversed in part. Barnes, P. J., and Miller, J., concur.*