**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and BRANCH, J.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**March 28, 2014**

# In the Court of Appeals of Georgia

A13A2049. WILLIAMS v. THE STATE.

PHIPPS, Chief Judge.

Charley Williams was convicted of possession of a firearm by a convicted felon.[1] On appeal, he challenges the sufficiency of the evidence and the court's failure to instruct the jury on his affirmative defense of justification. He also contends that he was denied his right to effective assistance of trial counsel and his right to a speedy trial. For the reasons that follow, we affirm.

1. Williams contends that the evidence was insufficient because it was possible that witnesses misidentified him as the person who had fled from police in the area in which the firearm was recovered and, even if he had possessed the firearm, he was

---

[1] OCGA § 16-11-131 (b).

justified in so doing because a law enforcement officer had requested his assistance in recovering it.

> When determining the sufficiency of evidence the Court must view the evidence in the light most favorable to the jury's verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt....Conflicts in the testimony of the witnesses, including the State's witnesses, are a matter of credibility for the jury to resolve. The Court must determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[2]

Construed to support the verdict, the evidence showed the following. Barbara Brewton, a law enforcement officer who was the aunt of Williams's brother (Richard Williams), discovered on about May 11, 2010 that her service weapon, a Glock .45 handgun, had been stolen from her home. She reported the theft to her employer.

Law enforcement officers testified that on May 12, 2010, Williams and his brother were walking along a road when the officers, a sergeant and a major, traveling in a patrol vehicle, approached the men. The sergeant had known the brothers "for quite a while" and knew them "very well," by face and by name; he positively identified the two men he saw walking as Williams and his brother.

---

[2] *Tolbert v. State*, 313 Ga. App. 46 (1) (720 SE2d 244) (2011).

Based on information he had received implicating the brothers in the handgun's disappearance, the sergeant directed the men to stop and raise their hands. Williams fled on foot down a path, and was not then apprehended; Williams's brother did not run, and was apprehended immediately. When a GBI agent arrived on the scene, the major accompanied him to the path along which Williams had run. The agent found the handgun that had been reported stolen "[o]n the other side of the fence" that bordered the path. Officers found ammunition for a Glock .45 handgun in Williams's brother's pocket. Williams's brother told officers and, later, Brewton that Williams was the person who had run from police.

At trial, Williams's brother testified that he had lied earlier when he implicated Williams; and said that when he told officers that the person who had run was "my brother," he meant another person (Reggie Grimes), whom "[e]verybody calls . . . their brother."

The state introduced at trial Williams's signed statement to police,[3] in which he admitted that he had possessed the handgun, having taken it from his brother. He wrote that he had possessed it for no longer than five minutes, that he had done so for the purpose of returning it to Brewton, and that he had hidden it in a wooded area.

_____

[3] Williams signed a "Waiver of [*Miranda*] Rights" form.

Testifying on his own behalf at trial, Williams stated that he had been walking with his brother and Grimes when he saw Grimes give the handgun to his brother; Williams took the handgun from his brother in order to return it to Brewton; Williams's uncle told him to hide the handgun and that the police would be called; he placed the handgun behind his grandmother's house; Williams's brother and Grimes removed the handgun from that location; and Williams was not with the two men when they encountered the officers.

Williams argues that the evidence identifying him as the person who ran from the officers was in conflict. But "identity is a question for the trier of fact, and the credibility of the [witnesses] was for the jury to determine."[4]

Williams also points to evidence that Brewton had asked him to try to recover the handgun for her, and claims that such evidence showed he was justified in possessing the handgun.[5] However, the jury would have been authorized to find from the evidence that Williams had run and discarded the handgun upon the officers'

[4] *Mobley v. State*, 279 Ga. App. 476, 477 (1) (631 SE2d 491) (2006) (citation and punctuation omitted).

[5] See OCGA § 16-3-22 (regarding immunity from criminal liability for persons rendering aid to a law enforcement officer under certain circumstances), discussed infra.

4

approach, and that he was not assisting a law enforcement officer who was being hindered in the performance of her official duties or whose life was being endangered by any other person's conduct while performing her official duties, as required for the asserted justification defense.[6] There was also evidence that Williams was a convicted felon. A rational trier of fact was authorized to find the essential elements of the crime charged beyond a reasonable doubt.[7]

2. Williams contends that the trial court erred by refusing to charge the jury on justification, inasmuch as he had been rendering assistance to a law enforcement officer by attempting to recover her stolen handgun. He points to testimony that Brewster had asked him to help her recover the handgun, and cites OCGA § 16-3-22. That statute provides:

> Any person who renders assistance reasonably and in good faith to any law enforcement officer who is being hindered in the performance of his official duties or whose life is being endangered by the conduct of any other person or persons while performing his official duties shall be immune to the same extent as the law enforcement officer from any

---

[6] See Division 2, infra; OCGA § 16-3-22.

[7] See *Parramore v. State*, 277 Ga. App. 372, 374 (626 SE2d 567) (2006).

5

criminal liability that might otherwise be incurred or imposed as a result of rendering assistance to the law enforcement officer.[8]

"A defense based upon any of the provisions of this article is an affirmative defense."[9]

Williams asserts that the court erred in not charging the jury on OCGA § 16-3-22 or more generally on justification, when justification was his sole defense and there was evidence supporting the charge. Williams submitted a written request to charge the principle of justification, and orally requested a charge on OCGA § 16-3-22. The court denied both requests.

"[T]o authorize a jury instruction on a subject, there need only be produced at trial slight evidence supporting the theory of the charge. Whether the evidence presented is sufficient to authorize the giving of a charge is a question of law."[10] "A

---

[8] OCGA § 16-3-22.

[9] OCGA § 16-3-28. "[T]his article" refers to "Article 2. Justification and Excuse," of "Chapter 3. Defenses to Criminal Prosecutions," of OCGA "Title 16. Crimes and Offenses." See also OCGA § 16-3-20 (6), providing that "[t]he fact that a person's conduct is justified is a defense to prosecution for any crime based on that conduct."

[10] *Hodges v. State*, 319 Ga. App. 657, 660 (3) (738 SE2d 111) (2013) (citation and punctuation omitted).

criminal defendant is ordinarily required to present written requests for any desired jury instructions."[11]

(a) *The written request for a (general) charge on justification*. The court was not required to give Williams's written request to charge on the general principle of justification. Williams maintains that the charge request was warranted pursuant to OCGA § 16-3-22. However, as discussed in Division 2 (b),[12] there was no evidence to support a charge pursuant to that statute.[13]

(b) *The oral request for a charge on OCGA § 16-3-22*. "Generally, where no written request for a jury charge has been filed, the failure to give that charge is not error. The trial court must charge the jury on the defendant's sole defense, even without a written request, if there is some evidence to support the charge."[14] Whether

---

[11] *Woods v. State*, 291 Ga. 804, 809 (3) (733 SE2d 730) (2012) (citation and punctuation omitted).

[12] Infra.

[13] See generally *Burrowes v. State*, 296 Ga. App. 629, 632 (3) (675 SE2d 518) (2009).

[14] *Isenhower v. State*, 324 Ga. App. 380, 384 (750 SE2d 703) (2013) (citation and punctuation omitted).

the affirmative defense of justification was authorized by the evidence is a question of law.[15]

The court was not required to instruct the jury regarding OCGA § 16-3-22 because (i) justification pursuant to that statute was not Williams's sole defense (he also claimed mistaken identity); and, (ii) the instruction was not authorized by the evidence, as there was no evidence that when Williams possessed the handgun Brewton was being hindered in the performance of her official duties or that her life was being endangered by the conduct of any other person while performing her official duties.[16] The court properly refused to give the jury charge.[17]

3. Williams contends that his trial counsel rendered ineffective assistance because he (a) failed to move for a directed verdict of acquittal; (b) failed to request a continuance so he (counsel) could review Williams's brother's recorded police statements; and (c) failed to request a jury charge on justification at the appropriate time.

---

[15] Id.

[16] See OCGA § 16-3-22.

[17] See generally *Burrowes*, supra.

Under *Strickland v. Washington*,[18] to succeed on an ineffective assistance claim, a criminal defendant must demonstrate both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance. There is a strong presumption that the performance of trial counsel falls within the wide range of reasonable professional assistance. The reasonableness of the conduct is viewed at the time of trial and under the circumstances of the case. If an appellant fails to meet his burden of proving either prong of the *Strickland* test, the reviewing court need not examine the other prong. When reviewing the trial court's decision, this Court will accept the trial court's factual findings and credibility determinations unless clearly erroneous; however, we review the court's application of legal principles de novo.[19]

(a) Counsel did not perform deficiently by failing to move for a directed verdict of acquittal because, given that the evidence was sufficient to sustain Williams's conviction, "any motion for directed verdict would have failed."[20]

(b) In his appellate brief, Williams has not shown (or even alleged) how trial counsel's performance was deficient or a reasonable probability that the outcome of

---

[18] 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

[19] *Russell v. State*, 319 Ga. App. 472, 476 (3) (735 SE2d 797) (2012) (citations and punctuation omitted).

[20] See *Jessie v. State*, _ Ga. _ (2) (a) (Case No. S13A1317, decided January 21, 2014).

the trial would have been different, had counsel requested a continuance to review the recorded statements of Williams's brother. Thus, he has not met his burden of proving either prong of the *Strickland* test as to this claim of error.[21]

(c) Trial counsel was not ineffective for failing to request the justification charge(s) earlier. Given the evidence at trial, there is no reasonable probability that, had counsel requested the charge(s) earlier, the outcome of the trial would have been different.[22]

4. Williams contends that he was denied his constitutional right to a speedy trial. But he did not present this argument in the trial court, and the trial court made no ruling related to this issue. When constitutional issues are not timely raised, "those challenges must be deemed waived on appeal."[23] Further,

> [i]ssues presented for the first time on appeal furnish nothing for us to review, for this is a court for correction of errors of law committed by the trial court where proper exception is taken, because one may not

---

[21] See generally *Blanchard v. State*, 324 Ga. App. 280, 281-283 (750 SE2d 183) (2013).

[22] See *Hosley v. State*, 322 Ga. App. 425, 428 (1) (746 SE2d 133) (2013).

[23] *Hardeman v. State*, 272 Ga. 361-362 (529 SE2d 368) (2000); see *Brinkley v. State*, 291 Ga. 195, 198-199 (2) (728 SE2d 598) (2012).

10

abandon an issue in the trial court and on appeal raise questions or issues neither raised nor ruled on by the trial court.[24]

*Judgment affirmed. Ellington, P. J., and Branch, J., concur.*

---

[24] *Jackson v. State*, 252 Ga. App. 16-17 (2) (614 SE2d 832) (2005) (citation and footnote omitted); see *Franklin v. State*, 305 Ga. App. 354, 363 (2) (699 SE2d 575) (2010).