**THIRD DIVISION**
**ELLINGTON, P. J.,**
**DILLARD and MCFADDEN, JJ.**

**NOTICE: Motions for reconsideration must be**
**_physically received_ in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**November 3, 2015**

# In the Court of Appeals of Georgia

A15A1837. MILLER v. THE STATE.                                    JE-068C

ELLINGTON, Presiding Judge.

A Whitfield County jury found Samantha Miller guilty of two counts of criminal trespass, OCGA §§ 16-7-21 (a), (b) (1); simple assault, OCGA § 16-5-20 (a) (2); and battery, OCGA § 16-5-23.1. Miller appeals from the order denying her motion for a new trial, contending that the trial court erred in failing to give jury charges on the affirmative defense of justification and that her trial counsel was ineffective for failing to request those charges. Finding no error, we affirm.

Viewed in the light most favorable to the jury's verdict,[1] the record shows the following. On November 3, 2012, Floyd Head received a phone call from Miller, his

---

[1] *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

former girlfriend, asking him for a ride. According to Head, Miller had been "wrestling" with her sister and needed to get away from her house. Head, who had been drinking, asked his friend Trevor Beebe to drive him to pick up Miller, and Beebe agreed. When Head and Beebe arrived at Miller's sister's house, Miller was outside, walking along the road. As soon as Beebe pulled over, Miller "dove into the back seat." Head and Beebe testified that Miller was behaving erratically, that she was "all over the place," and that she was talking nonsensically about the FBI. During the ride to Head's home, Miller bit Beebe twice. She also talked about having sex with Head and she tried to wrap her legs around his neck from the back seat of the car.

Head testified that he had seen Miller behave like this before and that he had hoped she would eventually calm down when Bebee went home. After Beebe left, Miller asked if she could launder her clothes and take a bath, and Head agreed. While Miller was in the laundry room, Head sat down in his recliner. Moments later, Miller, now naked, "c[a]me running at [him]," knocked him out of his recliner, and started biting and scratching him. Head hit Miller to get her to stop biting him, and Miller ran out of the house naked.

Miller ran toward the home of Yuliana Solis, which was about 55 feet away from Head's home. She started beating her face against Solis' air conditioning window unit and screaming: "Angel, come out of the room." Worried for the safety of his neighbor and her baby, Head called the police.

Solis testified that she was startled by the sounds of very loud banging near her front door. Miller then broke the window, pulled the air conditioning unit out, and climbed in to the home. Solis testified that Miller's face was bloodied, that she wanted "Angel" to come out, and that she screamed: "I'm going to kill you, you . . . bitch!" Solis ran with her baby to the kitchen and wedged a chair under the door. Solis called 911 and hid until the police arrived.

When law enforcement officers arrived, they heard glass breaking and items being thrown around inside Solis' home and someone yelling for "Angel." A detective with the Whitfield County Sheriff's Office testified that, as he entered Solis' home, Miller, who was naked, ran at him. He had to subdue her with a taser. Miller told the detective that she had pulled the air conditioning unit out so that she could get inside the house and get Angel. The detective testified that Miller's behavior was very erratic, that she disobeyed his orders to sit still, that she was "scooting around . . . on her knees and sliding around all over the floor, continually coming out of the

cover that [they] were trying to keep her covered with until [they] could get a female [officer] there." The deputy that had accompanied the detective described Miller as aggressive. The detective eventually had to use his taser a second time to subdue Miller.

The detective and the deputy testified that they believed Miller was under the influence of a drug, possibly methamphetamine, synthetic marijuana, or "bath salts." During the 40 minutes that Miller was with the responding officers, including a female corrections officer, she did not tell any of them that she was fleeing from an assailant, nor did she indicate that anyone had sexually assaulted her. Beebe had returned at Head's request and they both spoke with the deputy about Miller's behavior.

At trial, Miller claimed that she had broken in to Solis' home to escape Head, whom she claimed had spiked her drink with Rohypnol and had sexually assaulted her. However, she also testified that, when she decided to enter Solis' home, her alleged assailants had already stopped chasing her and had gone back home.

1. Miller contends the trial court erred in failing to charge the jury on the concepts of "affirmative defense" and "justification." Although the record shows that the court did, in fact, charge on the concept of justification as it pertained to using

4

reasonable force to protect oneself from an assault, Miller argues that the trial court's charge was insufficient because it did not adequately address her sole defense to criminal trespass, that is, that she was justified in entering Solis' home and damaging her property to escape from an ongoing assault. For the following reasons, we disagree.

"A criminal defendant is ordinarily required to present written requests for any desired jury instructions." (Citation and punctuation omitted.) *Woods v. State*, 291 Ga. 804, 809 (3) (733 SE2d 730) (2012). See also OCGA § 5-5-24 (b). However, "[i]f an affirmative defense is raised by the evidence . . . the trial court must present the affirmative defense to the jury as part of the case in its charge, even absent a request." (Citation and punctuation omitted.) *Watts v. State*, 259 Ga. App. 531, 533 (3) (578 SE2d 231) (2003). See also *Price v. State*, 289 Ga. 459 (2) (712 SE2d 828) (2011) ("The trial court must charge the jury on the defendant's sole defense, even without a written request, if there is some evidence to support the charge.") (citation and punctuation omitted). "[A]n affirmative defense is one that admits the doing of the

act charged but seeks to justify, excuse, or mitigate it." (Punctuation and footnote omitted.) *Strickland v. State*, 267 Ga. App. 610, 611 (600 SE2d 693) (2004).[2]

In this case, Miller testified that she bit and scratched Head to escape a sexual assault and that she damaged Solis' home and broke into it in order to escape her assailant. Miller's counsel orally requested and the trial court gave the jury a charge on justification, but it pertained specifically to the use of force against another person and did not address justification for other criminal acts such as trespass.[3] The trial

---

[2] The court was not required to instruct the jury on the definition of "affirmative defense" absent a written request when, as in this case, the charge as a whole would not mislead a jury of average intelligence as to what was required to prove the affirmative defense of justification. See *Redd v. State*, 232 Ga. App. 666, 667 (2) (b) (502 SE2d 467) (1998).

[3] The court gave the following charge:

A person is justified in threatening or using force against another person when and to the extent that she reasonably believes that such threat or force is necessary to defend herself or a third person against the other's imminent use of unlawful force. A person is justified in using force that is intended or likely to cause death or great bodily harm only if that person reasonably believes that such force is necessary to prevent death or great bodily injury to herself or a third person or to prevent the commission of a forcible felony. The State has the burden of proving beyond a reasonable doubt that the defendant was not justified.

6

court, in its order denying Miller's motion for a new trial, explained that it was not required to give a justification charge with respect to the criminal trespass counts because the evidence was insufficient to support such a charge. The court explained:

> Here, upon leaving Mr. Head's residence, Ms. Miller had options available to her apart from breaking into a neighbor's residence: she could have called the police, she could have requested entry to a nearby house to call the police, or she could have just run down the street and hid. There was no immediate threat such that she needed to damage the air conditioner and break into Ms. Solis' residence.

Indeed, Solis' home was a mere 55 feet away from Head's home. In the time it took Miller to rip an air conditioning unit from the window and break in, her allegedly pursuing assailants should have been able to catch her. More significantly, however, Miller's own testimony supported the court's findings. She admitted that, when she entered Solis' home, her assailants had stopped chasing her and had gone home. Given this evidence, the court did not err in declining to give a charge on justification as it pertained to the criminal trespass counts. See *Moon v. State*, 244 Ga. App. 443, 446 (3) (535 SE2d 771) (2000) (The trial court did not err in failing to charge, sua sponte, on justification where the evidence showed that the defendant, a drug addict,

had options available to him other than stealing a car in order to drive to a clinic to get his medication.).

2. Miller contends that her trial counsel was ineffective because he did not request the jury charges discussed in Division 1, supra. However, where the evidence does not support the giving of a charge, counsel's failure to request the charge does not amount to ineffective assistance. See, e.g., *Alston v. State*, 277 Ga. App. 117, 117-118 (1) (a) (625 SE2d 475) (2005) (withdrawal of request for jury charge on an affirmative defense was not ineffective assistance where the evidence did not support such a defense); *Davis v. State*, 209 Ga. App. 187, 190 (6) (433 SE2d 366) (1993) (counsel was not ineffective based on jury charge where defendant failed to show that the charges in question were erroneous). Consequently, the trial court did not err in denying Miller's claim of ineffective assistance of counsel.

*Judgment affirmed. Dillard and McFadden, JJ., concur.*