## A09A0755. BROWER v. THE STATE.

(680 SE2d 859)

BARNES, Judge.

Robbie Eugene Brower appeals his convictions of four counts of kidnapping, two counts of possession of a hoax device, two counts of terroristic threats, and one count of possession of a knife during the commission of a crime. He contends the trial court erred by refusing to charge the jury on the principles of the defense of justification and on the lesser included offense of false imprisonment. Brower also contends the State failed to prove an essential element of the crime of kidnapping, asportation. We disagree, and for the reasons stated below, affirm Brower's convictions.

When this court reviews the sufficiency of the evidence, "the proper standard for review is whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979)." *Dean v. State*, 273 Ga. 806, 806-807 (1) (546 SE2d 499) (2001). We review the evidence in the light most favorable to the verdict, giving deference to the jury's determination on the proper weight and credibility to be given. Id. at 807 (1). It is the function of the jury to assess the credibility of the witnesses, to resolve any conflicting evidence, and to determine the facts, not an appellate court. *Butler v. State*, 273 Ga. 380, 382 (1) (541 SE2d 653) (2001). If competent evidence exists, though contradicted, to support the facts necessary to prove the State's case, we will not reverse the jury's verdict. *Childress v. State*, 251 Ga. App. 873, 876 (2) (554 SE2d 818) (2001).

Viewed in the light most favorable to the verdict, the evidence shows that Brower and his wife entered the law office of the lawyer

who had represented him in a previous criminal case[1] and who Brower claims was guilty of "gross misfeasance" in handling his case. They first encountered three female members of the office staff.

The receptionist was standing in the doorway of the legal assistant's office when she heard the office door open, but before she could turn to see who it was, someone grabbed her jacket, asked where the attorney was, and when she told him, pushed her to the very last office where the attorney was working. When they got to the office, the man had her sit in a chair inside the office door. At that point the man complained that the attorney had ruined his life and he had waited 11 years for revenge. The attorney offered to pay Brower, but Brower said no, that he wanted revenge. Brower ordered the attorney to go stand in a corner, and when the attorney kept turning around, Brower told Mrs. Brower to put duct tape over the attorney's mouth, and she also taped his hands.

The legal assistant heard someone tell the receptionist to go to the back, and then Mrs. Brower entered the legal assistant's office and told her to go to the back of the office. When she did not comply immediately, Mrs. Brower grabbed the legal assistant by the arm "real hard," and said, "You better go to the back before I push you." Mrs. Brower had a wrapped-up package with her that the legal assistant assumed was a gun. The legal assistant then started walking to the back of the office. After Mrs. Brower locked the door to the office, she pushed open the door to another office and "got" another of the office staff. Mrs. Brower "caught" this second woman by the arm and told her to come with Mrs. Brower; Mrs. Brower pulled and pushed her down the hall. When they arrived in the attorney's private office, they found the receptionist and the attorney with another man. The man told them to sit down. What appeared to be a bomb was on the attorney's desk.

Brower and his wife were dressed in what appeared to be camouflage jackets and pants. The attorney attempted to find out what Brower wanted and negotiate with him, but Brower made him stand in a corner facing the wall. Brower told the office staff that he did not want them, he would not hurt them, he wanted the attorney, and he would release them in about five minutes. The women did not feel free to leave and the legal assistant did not believe that Brower would not hurt her; she was held against her will and she did not go to the back office of her own volition.

After holding the women for ten to thirty minutes, depending upon the staff's estimates, Brower opened the back door of the office and, after allowing the women to get their purses, released the

---

[1] See *Brower v. State*, 230 Ga. App. 125 (495 SE2d 600) (1998).

women. He told them before they were released that he had a bomb and he wanted the women to tell everyone that they were armed and dangerous and meant business. As they were leaving, Mrs. Brower asked Brower if he wanted to hold one of them hostage, but he said no. Two of the women went to a nearby office and called 911.

The attorney testified that he was in his office in the back of the building when the receptionist and a man he later recognized as Brower arrived. The man said something like, "Today is the day you're going to meet your maker." Brower and his wife ordered the attorney to get against the wall, raise his hands, and get on his knees. When the attorney tried to talk to them, Brower repeated, "Shut up, shut up." Then, while the attorney was on his knees facing the wall, Brower duct taped his hands behind his head.

Finally, after about 15 to 20 minutes, the attorney convinced Brower that his dispute was with him, not the women, and Brower let the women go. After this, Brower taped the attorney to a rolling chair and rolled him from the back to the front of the office. Brower, Mrs. Brower, and the attorney remained in the front office for most of the remainder of the day while the Browers watched the TV reports about the hostage situation, threatened revenge on the attorney, negotiated with the authorities, and sent out demands.

Late in the afternoon, food was sent in and the Browers freed the attorney's hands so that he could eat. The attorney was able to free himself from the duct tape sufficiently to attempt an escape, but the Browers caught him. This time he was tied with extension cords and duct tape, and put on the floor in a dark office until at some point, he convinced Brower to talk to another local attorney. After conversations with the attorney and some of the official negotiators, the attorney convinced Brower to surrender. Finally, after many hours, they attempted to come out; they were directed to get on their knees, and then Brower became upset and, threatening to break the attorney's neck, forced him back in the building and again locked him in a room.

The next morning, the attorney talked with Brower and Brower decided to attempt to surrender again. And, this time they were able to do so successfully.

Subsequently, Brower was indicted, tried, and convicted. After his motion for a new trial was denied, this appeal followed.

1. Because of matters received from the defense suggesting that Brower intended to rely upon the affirmative defense of justification, the State moved in limine for a hearing to consider the admissibility of evidence concerning the defense. Brower contended that his sole defense was that he was justified in acting as he did as a last resort to correct a grave injustice done by the attorney when he represented Brower in the criminal case ten years ago. Brower alleged he was

sent to prison[2] because of the attorney's "gross malfeasance." Thus, he asserted that he was entitled to cross-examine the attorney about his prior representation, offer testimony claiming justification and his reasons for it, offer documentary evidence supporting his claims, include justification in his opening statement and closing argument, and receive jury instructions on the principles of justification.

The trial court found that Brower was not entitled to assert the defense of justification, granted the State's motion, and subsequently refused to give Brower's requested charge on the affirmative defense of justification.

Brower contends the trial court erred by refusing to charge the jury on the affirmative defense of justification. He asserts that he was entitled to a charge on this defense because the broad legal principles of OCGA § 16-3-20 (5) and (6) apply in this case. We disagree.

The issue here is whether the defense Brower wished to assert, i.e., that his actions in this incident were "justified for any other reason under the laws of this state," or stood on the "same footing of reason and justice as those enumerated" in OCGA § 16-3-20, was authorized by the evidence. This is a question of law. *Davis v. State*, 269 Ga. 276, 279 (3) (496 SE2d 699) (1998); *Heath v. State*, 240 Ga. App. 492, 493 (2) (522 SE2d 761) (1999).

The defense of justification is an affirmative defense.

> With a legal affirmative defense, the accused admits the elements of the crime, but seeks to justify, excuse, or mitigate by showing no criminal intent; all elements of the parts of the crime are admitted with the exception of the intent. All defenses which have been held to be statutory affirmative defenses meet this criteria; i.e., justification, self-defense or defense of others, rendering assistance to law enforcement officers, defense of habitation, defense of property other than habitation, entrapment, and coercion. See OCGA §§ 16-3-20 through 16-3-28. Each of these affirmative defenses requires that the defendant admit the crime before he can raise such defense. In fact, even under the more general provision of OCGA § 16-3-20 (6), the defense of justification can only be claimed "in all other instances which stand upon the same footing of reason and justice as

---

[2] We must note that Brower's allegations against this attorney were included in his earlier appeal and were rejected by this court. See *Brower v. State*, supra, 230 Ga. App. at 126-127 (2)-(4).

those enumerated in this article (Article 2 of Chapter 3 of Title 16)."

*Hightower v. State*, 224 Ga. App. 703, 705 (2) (481 SE2d 867) (1997). The defense of justification can be claimed:

(1) When the person's conduct is justified under Code Section 16-3-21 [Self-defense], 16-3-23 [Defense of habitation], 16-3-24 [Defense of property other than habitation], 16-3-25 [Entrapment], or 16-3-26 [Coercion]; (2) When the person's conduct is in reasonable fulfillment of his duties as a government officer or employee; (3) When the person's conduct is the reasonable discipline of a minor by his parent or a person in loco parentis; (4) When the person's conduct is reasonable and is performed in the course of making a lawful arrest; (5) When the person's conduct is justified for any other reason under the laws of this state; or (6) In all other instances which stand upon the same footing of reason and justice as those enumerated in this article.

OCGA § 16-3-20.

Brower asserts that he is entitled to claim the defense under subsections (5) and (6), i.e., "conduct is justified for any other reason under the laws of this state" and "instances which stand upon the same footing of reason and justice as those enumerated in this article." Because Brower has not identified in his response to the State's motion in limine, his requested jury charges, his motion for a new trial, or his amendment to that motion "any other reason under the laws of this state" that would justify his conduct, we find that a defense under OCGA § 16-3-20 (5) was not authorized, and the trial court did not err by finding that a charge based upon that subsection was not warranted.

Therefore, if Brower was entitled to a charge on justification, it must be authorized under OCGA § 16-3-20 (6). Subsection (6) is included because the legislature apparently realized

that justice might need wider berth than the legislature could articulate prospectively. . . . This allows the defense of justification in circumstances unparticularized by the legislature but instead left to the jury, with the limitation that it be of the same quality as the enumerated instances. That is, the instance must stand on "the same footing of reason and justice" as those described.

*Nelson v. State*, 213 Ga. App. 641, 642 (2) (445 SE2d 543) (1994). As Presiding Judge Andrews explained in his concurring opinion

in *Wells v. State*, 200 Ga. App. 104, 106-108 (407 SE2d 86) (1991):

> Subsection (6) applies when the otherwise criminal conduct at issue cannot be justified under the criteria set out in the other enumerated subsections of OCGA § 16-3-20, but a rational basis exists to assert that such conduct is justified because it stands "upon the same footing of reason and justice as those enumerated in this article." Whether conduct is justified by fitting within the criteria of subsections (1) through (5), or whether it stands upon the same footing as these defenses is necessarily dictated by the facts of each case.
>
> Here, there is evidence to support the defendant's contention that he falsely held himself out as a police officer in an attempt to avoid an immediate and reasonably perceived threat of serious bodily injury to himself. Though this conduct is analogous to conduct justified under OCGA §§ 16-3-21 (Use of force in defense of self or others) and 16-3-26 (Coercion), it does not fit within the parameters of either. Self defense does not apply because the defendant used verbal deception rather than force to defend himself. Coercion does not apply because those threatening the defendant were not attempting to coerce or compel him to impersonate a police officer, rather he chose that conduct as a defense to the threat.
>
> The defendant was entitled to a charge on justification under subsection (6) because the facts support a rational connection between his conduct and the defenses of self defense and coercion which places his conduct on the same footing of reason and justice as these defenses. Both the self defense and coercion defenses may be understood as justifying otherwise criminal conduct "on a common theme of 'lesser of two evils.' " Kurtz, Criminal Offenses & Defenses in Ga. (2d ed.), pp. 250-252. The use of force in self defense, or undertaking criminal conduct in submission to coercion, may be justified as an acceptable alternative to suffering death or great bodily injury, if the force used or criminal conduct undertaken is a reasonably proportioned response to an immediate threat. Under the circumstances confronting the defendant, his single false statement that he was a police officer, made in an attempt to dissuade an immediate attack and escape serious bodily injury, stands on the same "lesser of two evils" footing. The conduct was arguably a reasoned and proportional response to the perceived threat,

YALE LAW LIBRARY

therefore the defendant was entitled to invoke the defense of justification under OCGA § 16-3-20 (6).

Earlier this court held that to "stand upon the same footing of reason and justice," a defense of justification under OCGA § 16-3-20 (6) would still have to be premised upon the asserted prevention of "imminent use of unlawful force." *Hoover v. State*, 198 Ga. App. 481, 482 (4) (402 SE2d 92) (1991). Later, our Supreme Court held that a charge on the defense of justification was required in a case in which the defendant was convicted of being a habitual violator, see OCGA § 40-5-58, for driving without a license because the defendant testified that he drove without a license because his wife was experiencing labor pains, the doctor said he needed to see her, and she could not drive herself to the doctor's office. *Tarvestad v. State*, 261 Ga. 605, 606 (409 SE2d 513) (1991). The Supreme Court found that a

> jury could have found that his decision to seek medical help for his wife and their soon-to-be-born child stands on "the same footing of reason and justice" as a government employee's reasonable fulfillment of his duties, a parent's reasonable discipline of a child, and a person's reasonable conduct in performing a citizen's arrest. See OCGA § 16-3-20 (2), (3), and (4). Having presented some evidence on his sole defense, he was entitled to the jury instruction that he orally requested.

Id. The common thread in all of the examples noted by the Supreme Court is that the actor had a duty to act in regard to others. In *Tarvestad* it was the duty one spouse owes to the other and the unborn child. Implicit in this decision was the determination that a jury issue existed on whether an immediate need existed for his wife to receive medical attention. We find it highly unlikely that, absent an immediate need for action, a justification charge would be authorized.

A premise underlying all the defenses specified in OCGA § 16-3-20 is that the defendant faced circumstances created by external events that demanded prompt, if not immediate, action. See *Gravitt v. State*, 279 Ga. 33, 34 (2) (608 SE2d 202) (2005) (no imminent threat); *Porter v. State*, 272 Ga. 533, 535 (3) (531 SE2d 97) (2000) (any imminent threat of harm had ended); *Odum v. State*, 220 Ga. App. 263, 264 (469 SE2d 394) (1996) (no emergency); *Nelson v. State*, supra, 213 Ga. App. at 642 (2) (prevent further and possibly more violent attack).

We find that Brower's reliance upon *Moore v. State*, 234 Ga. App.

YALE LAW LIBRARY

332 (506 SE2d 685) (1998), is misplaced. Although the opinion in *Moore v. State* does not analyze Moore's entitlement to the charge in detail, Moore's actions were apparently based upon his belief that he was in imminent danger of suffocating and that his only recourse was to kick out the window of the police car. This is a far different situation than that existing in Brower's case.

Even though Brower asserts that justification was his sole defense, it is not error to refuse a justification charge when there is no evidence to support it. *Alexis v. State*, 273 Ga. 423, 426 (4) (541 SE2d 636) (2001); *Porter v. State*, supra, 272 Ga. at 534 (3). Accordingly, the trial court did not err by refusing to give a charge on justification.

2. Brower further contends that his conviction for kidnapping should be reversed because the State failed to prove the essential element of asportation. "A person commits the offense of kidnapping when he abducts or steals away any person without lawful authority or warrant and holds such person against his will." OCGA § 16-5-40 (a).

In *Garza v. State*, 284 Ga. 696 (670 SE2d 73) (2008), our Supreme Court adopted the test[3] from *Govt. of Virgin Islands v. Berry*, 604 F2d 221, 16 V.I. 614 (3d Cir. 1979), to establish "a more cogent standard for determining the sufficiency of evidence of asportation." *Garza v. State*, 284 Ga. at 701. This test

> assesses four factors in determining whether the movement at issue constitutes asportation: (1) the duration of the movement; (2) whether the movement occurred during the commission of a separate offense; (3) whether such movement was an inherent part of that separate offense; and (4) whether the movement itself presented a significant danger to the victim independent of the danger posed by the separate offense.

Id. at 702. The test is to assist

> in determining whether the movement in question is in the nature of the evil the kidnapping statute was originally

---

[3] The legislature subsequently amended the kidnapping statute to provide that slight movement is sufficient to prove kidnapping as long as the movement was not incidental to another offense, then further defined what actions would not be incidental to another offense. This statute applies to crimes committed on or after the revised statute's effective date, July 1, 2009. OCGA § 1-3-4. The crimes in this case occurred in January 2006, and therefore the standard set forth in *Garza* applies. This amendment also provides that "[t]he offense of kidnapping shall be considered a separate offense and shall not merge with any other offense." Ga. L. 2009, p. 331, § 1.

intended to address — i.e., movement serving to substantially isolate the victim from protection or rescue — or merely a "criminologically insignificant circumstance" attendant to some other crime.

Id.

Considering first Brower's convictions for kidnapping the three women, we find that the evidence that they were physically forced from the front of the office near the front door to a room at the rear of the building in a more isolated area shows that their movement was not incidental to any other crime, and it placed them in additional danger by enhancing the Browers' control over them. Further, their movement served to substantially isolate them from protection or rescue. *Garza v. State*, supra, 284 Ga. at 702. This was not merely a "criminologically insignificant circumstance" attendant to some other crime. Id.; *Rayshad v. State*, 295 Ga. App. 29, 33 (1) (b) (670 SE2d 849) (2008). Accordingly, the element of asportation was established and the trial court did not err in sentencing Brower on the kidnapping convictions. *Henderson v. State*, 285 Ga. 240, 245 (5) (675 SE2d 28) (2009).

We also find that the evidence discussed above shows that movement of the attorney to and from the various locations within his office was sufficient to prove the asportation requirement of kidnapping. The attorney was moved about for hours, the movement was not part of a separate offense, and the various movements presented a significant danger to the attorney by substantially isolating him from rescue, and indeed, prevented his rescue or escape. *Garza v. State*, supra, 284 Ga. at 702.

3. Brower contends the trial court erred by not charging the jury on the lesser included offense of false imprisonment in violation of OCGA § 16-5-41. Citing *Thompson v. State*, 277 Ga. App. 323, 325 (3) (626 SE2d 825) (2006), he argues that a request to charge on a lesser included offense must always be granted if there is any evidence that a defendant is guilty of the lesser included offense. The complete statement of the law on which he relies, however, includes another significant factor:

A written request to charge a lesser included offense must always be given if there is any evidence that the defendant is guilty of the lesser included offense. *However, when the evidence establishes all of the elements of the indicted offense and there is no evidence showing the lesser offense, there is no error in refusing to charge the lesser offense.*

(Citations omitted; emphasis supplied.) Id. Here no evidence exists that Brower merely detained the victims. Instead, as discussed above

the evidence shows that from the first moment he entered the law office Brower moved the victims to more isolated places where he could exercise greater control over them and prevent their rescue. "Where the evidence shows either the completed offense as charged or no offense, such evidence will not support a verdict for one of the lesser grades of the offense, and the court should not charge on the lesser grades of the offense." *Burley v. State*, 172 Ga. App. 34, 35 (3) (b) (321 SE2d 783) (1984). Kidnapping is not a continuing offense;[4] it was complete when Brower seized the victims and forced them to the back office or moved them around. *Hill v. State*, 279 Ga. App. 666, 668-669 (2) (632 SE2d 443) (2006). Consequently, the trial court properly declined to charge on the lesser included offense when there was no evidence that Brower was guilty of merely false imprisonment. *Lucas v. State*, 295 Ga. App. 831, 833 (3) (673 SE2d 309) (2009).

Accordingly, the trial court did not err by refusing to give a charge on false imprisonment.

*Judgment affirmed. Miller, C. J., and Andrews, P. J., concur.*

DECIDED JULY 2, 2009 — 

*Robert L. Persse*, for appellant.

*Richard A. Mallard, District Attorney, Daphne H. Jarriel, Assistant District Attorney*, for appellee.

---

[4] As the 2009 amendment to OCGA § 16-5-40 also added a subsection (f) providing that "[t]he offense of kidnapping is declared to be a continuous offense, and venue may be in any county where the accused exercises dominion or control over the person of another," this statement is no longer true for future cases. See Ga. L. 2009, p. 331, § 1.