**THIRD DIVISION**
**BARNES, P. J.,**
**BOGGS and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.** **http://www.gaappeals.us/rules/**

**October 7, 2014**

# In the Court of Appeals of Georgia

A14A1352. JACKSON v. THE STATE.

BRANCH, Judge.

James Gower Jackson was tried by a Clayton County jury and found guilty on two counts of criminal damage to property in the second degree[1] and one count of simple assault.[2] He now appeals from the denial of his motion for a new trial, arguing that the trial court erred when it refused to instruct the jury on the defense of justification. We find no error and affirm.

"On appeal from a criminal conviction, the defendant is no longer entitled to a presumption of innocence and we therefore construe the evidence in the light most favorable to the jury's guilty verdict." *Marriott v. State*, 320 Ga. App. 58, (739 SE2d

---

[1] OCGA § 16-7-23 (a) (1).

[2] OCGA § 16-5-20 (a) (2).

68) (2013) (citation omitted). So viewed, the record shows that Jackson was previously employed as a truck driver for Super Service Trucking. On October 27, 2011, while driving a trailer of freight to Tennessee, Jackson used the Qualcom system[3] located in the cab of the Super Service truck he was driving to send a message to Bruce Ellington, Super Service's Director of Operations. Jackson told Ellington that he was going to bring Ellington his " god damn truck" because he was "tired of delivering [Super Service's] freight for nothing"; he concluded the message by writing "[w]hatever happens now just remember you drove me to it." Ellington replied to the message, telling Jackson that he accepted Jackson's resignation. After receiving Ellington's reply, and assuming that he had been fired, Jackson dropped the trailer loaded with freight at a truck stop off of I-75 in north Georgia, near the Tennessee line. Jackson then drove the truck cab to the Super Service facility in Ellenwood, Georgia.

Vehicles enter the Super Service facility at Ellenwood through a parking lot. Trucks entering the lot are then supposed to drive to a guard shack located at an interior gate, check in with the guard, and then drive around the building to the back

---

[3] Qualcom is a computerized system that allows drivers to exchange messages with people at the Super Service offices.

entrance. When he returned with the truck cab, however, Jackson neither stopped at the guard gate nor attempted to drive to the back of the building. Instead, he drove past the guard shack and through the interior gate, made a sharp left turn, and ran into two SUVs parked near the building. One of the SUVs belonged to Ellington and the other belonged to Danny Bryan, the Super Service terminal manager. Jackson then exited the truck cab carrying his tire bat, which was described as a long wooden object that resembles a billy club. Carrying the tire bat, Jackson walked into Ellington's office and told Ellington he was "going to whoop somebody's ass." Jackson also told Ellington that he had "hit a couple of cars in the parking lot." After observing the damaged cars and truck cab from his office window, Jackson called the police while another Super Service Employee walked Jackson out of the building. Following an investigation at the scene, the responding officer arrested Jackson.

Jackson testified in his own defense and stated that as he pulled into the Super Service parking lot, the truck's throttle became stuck. He then accidentally hit the accelerator instead of the brake, and he indicated that the accelerator got stuck. At that point, Jackson decided to steer the truck into the parked cars to avoid hitting either the guard or two Super Service employees who were sitting at a nearby picnic

table. Jackson further explained that he confronted Ellington while carrying a tire bat because he was afraid Ellington would be angry about the damage to his car.

During the charge conference, Jackson requested charges on the affirmative defenses of justification and accident. The trial court agreed that the charge on accident was supported by the evidence, but declined to give the charge on justification, finding that Jackson's testimony showed that the damage to the cars was accidental. As the court explained its reasoning, "what [Jackson's] saying here is the truck malfunctioned. [He] had an accident and [he] ran into their cars instead of running into people. I think that's all covered by accident." Jackson excepted to the jury charge and on appeal he contends that the trial court's refusal to give his requested charge on justification constitutes reversible error.

A defendant is entitled to a requested jury charge on an affirmative defense as long as there is at least some evidence, including the defendant's own testimony, to support it. *Price v. State*, 289 Ga. 459, 459-460 (2) (712 SE2d 828) (2011). Whether the evidence presented supports a particular affirmative defense is a question of law, *Lewis v. State*, 292 Ga. App. 257, 264 (2) (663 SE2d 721) (2008), and the trial court's ruling on this issue is therefore subject to de novo review. *Burdett v. State*, 285 Ga. App. 571 (646 SE2d 748) (2007).

4

When a defendant claims justification, he admits that he intended to engage in the conduct which constitutes the crime but argues that under the circumstances he was justified in so acting and that he therefore lacked the requisite criminal intent.[4] *Brower v. State*, 298 Ga. App. 699, 702 (1) (680 SE2d 859) (2009) (the defense of justification requires that a defendant admit all elements of the crime except intent). See also *Tarvestad v. State*, 261 Ga. 605, 606 (409 SE2d 513) (1991) (defendant was entitled to a jury instruction on justification where he admitted driving without a valid license, but argued that he was justified in doing so because his pregnant wife was experiencing labor pains and was unable to drive, and the doctor had instructed her to come to his office); *Moore v. State*, 234 Ga. App. 332, 333 (1) (506 SE2d 685) (1998) (on charge of interference with government property, defendant was entitled to a charge on justification where he admitted kicking out the window in a police car,

---

[4] Under Georgia law, a criminal defendant may prove that his conduct was justified because it occurred in defense of himself, his home or his property, or in defense of other persons; resulted from entrapment or coercion; occurred in reasonable fulfillment of his duties as a government officer or employee; constituted the reasonable discipline of a minor by his parent or a person in loco parentis; was both reasonable and performed in the course of making a lawful arrest; or was "justified for any other reason under the laws of [Georgia]". OCGA § 16-3-20 (1)-(5). A defendant may also assert justification "[i]n all other instances which stand upon the same footing of reason and justice as" any of the foregoing grounds. OCGA § 16-3-20 (6).

and the evidence showed that he was in respiratory distress resulting from an allergic reaction to pepper spray and needed air).

Unlike justification, the defense of accident is premised on the defendant's assertion that he did not intend to commit the act which constitutes the crime.[5] See *State v. Ogilvie*, 292 Ga. 6, 9 (2) (b) (734 SE2d 50) (2012) (in cases involving strict liability traffic offenses, the defense of accident "must be based . . . on evidence that the prohibited act was committed involuntarily, for example, because of an unforeseeable physical ailment or external force") (citations omitted); *McBurnette v. State*, 236 Ga. App. 398, 399 (512 SE2d 298) (1999) (defendant entitled to jury charge on accident where he testified that he did not deliberately strike victim but that victim was struck inadvertently by defendant's elbow as defendant turned in an attempt to keep the defendant from striking him); *Sapp v. State*, 179 Ga. App. 614, 615 (2) (347 SE2d 354) (1986) (in a prosecution for obstructing a police officer, the defendant's testimony that her conduct in obstructing the officer resulted from a fall caused by illness required a jury charge on accident). Additionally, a defendant

---

[5] The defense of accident is set forth in OCGA § 16-2-2, which provides "[a] person shall not be found guilty of any crime committed by misfortune or accident where it satisfactorily appears there was no criminal scheme or undertaking, intention, or criminal negligence."

6

claiming accident must also show that the allegedly unintentional act did not occur while he was engaged in a "criminal scheme or undertaking" and that he was not criminally negligent, i.e., that his conduct "did not show an utter disregard for the safety of others who might reasonably be expected to be injured thereby." *Lee v. State*, 320 Ga. App. 573, 578-579 (2) (740 SE2d 307) (2013) (where defendant hit victims' car while fleeing from police at a high rate of speed, he was not entitled to a jury instruction on accident) (citation and punctuation omitted).

Given that a defendant claiming justification admits intentionally engaging in the charged conduct while a defendant claiming accident does not, the two defenses are usually considered mutually exclusive and as a general rule will not be charged in the same case. *Hill v. State*, 300 Ga. App. 210, 212 (1) (684 SE2d 356) (2009); *Lewis v. State*, 292 Ga. App. 257, 264 (2) (663 SE2d 721) (2008); *Payne v. State*, 273 Ga. App. 483, 487 (7) (615 SE2d 564) (2005). The cases in which Georgia's appellate courts have found that a defendant is entitled to a jury instruction on both justification and accident are those in which some evidence shows that the defendant was armed with a weapon while defending himself from another party and the other party was wounded or killed accidentally by that weapon. See *Hudson v. State*, 284 Ga. 595, 597 (4) (669 SE2d 94) (2008) (evidence supported a jury charge on both accident and

7

justification where defendant testified that she brandished knife at the victim after he threatened her, that she did not intend to stab him, and that she could not recall how the knife wound up in the victim); *Koritta v. State*, 263 Ga. 703, 704 (438 SE2d 68) (1994) (a trial court should charge the jury on both accident and justification "where one who is armed with a weapon claims it accidentally discharged while he was defending himself from another party") (citation omitted); *Turner v. State*, 262 Ga. 359, 360-361 (2) (b) (418 SE2d 52) (1992) (same). Under those particular circumstances, a jury could find that the defendant acted intentionally in using his weapon, but that his conduct was justified by self-defense. Alternatively, the jury could find that the use of the defendant's weapon was unintentional, in which case the defense of accident would apply. See *Hill*, 300 Ga. App. at 212-213 (1) (where evidence shows that defendant had armed himself for purposes of self-defense and that the victim was injured accidentally, the defendant was not required to choose between the defenses of accident and justification "but [was] entitled to have the jury, under proper instruction, to determine which, if either, of the defenses is applicable") (citations omitted).

In this case, Jackson argues that he was entitled to a jury instruction on both accident and justification because although he claimed that the entire incident resulted

from a malfunctioning truck, he also testified that he deliberately chose to strike the parked cars to avoid striking people. Although that testimony explains why Jackson made a sharp turn into the parked cars, Jackson's defense was that the truck's throttle and/or accelerator stuck, that he was unable to stop the truck, and that he elected to steer the truck towards fixed objects and away from the Super Service employees present in the parking lot. According to Jackson, therefore, his crashing of the truck was the unintentional result of unforeseen circumstances over which he had no control. Thus, under his version of the events, the damage to the parked cars resulted from an unavoidable accident. Moreover, Jackson's testimony as to the reasons for his decision to steer the truck towards the parked cars served to support his accident defense. If believed by the jury, that testimony would have shown when he decided to hit the cars Jackson "was acting with regard for the safety of others, i.e., without criminal negligence." *Davis v. State*, 269 Ga. 276, 280 (3) (496 SE2d 699) (1998) (citations omitted).

Additionally, Jackson's position that the damage to the property was the result of a malfunctioning truck is inconsistent with a justification defense. As discussed supra, such a defense requires that a defendant admit to otherwise criminal conduct.

9

Here, however, Jackson claimed his conduct was the result of an accident, and he therefore has not admitted that the conduct was otherwise criminal.

Given Jackson's theory of defense and the evidence presented at trial, we find no error in the trial court's refusal to give Jackson's requested jury charge on justification. See *London v. State*, 289 Ga. App. 17, 19 (1) (656 SE2d 180) (2007).

*Judgment affirmed. Barnes, P. J., and Boggs, J., concur*.