**FOURTH DIVISION**
**MCFADDEN, P. J.,**
**RICKMAN and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**April 29, 2019**

# In the Court of Appeals of Georgia

A19A0334. GLENN v. THE STATE.

MARKLE, Judge.

Christopher Glenn appeals from the trial court's order finding that he violated the terms of his probationary sentence. In his sole enumeration of error, Glenn argues the trial court erred in revoking his probation by finding he committed the new felony offense of interference with government property. For the reasons stated below, we affirm.

"[T]his Court will not interfere with a revocation absent manifest abuse of discretion on the part of the trial court. Accordingly, if admissible evidence is presented in support of the allegations regarding revocation of probation, this Court will affirm." (Citations and punctuation omitted.) *Brown v. State*, 294 Ga. App. 1, 3 (2) (668 SE2d 490) (2008).

The record shows that in June 2017, Glenn was convicted of felony obstruction of an officer and battery and was sentenced to 24 months probation. As a general condition of probation, he was not to violate any criminal laws. In May 2018, a probation warrant was issued against Glenn, alleging he violated his probation by committing the new offenses of loitering/prowling, obstruction of a law enforcement officer, and interference with government property. That same month, the State filed a petition for modification/revocation of probation, contending Glenn violated his probation by committing these new offenses.

At the probation revocation hearing, an officer of the Athens-Clarke County Police Department testified that, in May 2018, he was dispatched to investigate a suspicious person. He encountered Glenn walking near the back of Oglethorpe Elementary School around the time students were being released from school. The officer had encountered Glenn on a previous occasion. Based on his previous experience with Glenn, the officer called for and awaited backup. Before backup arrived, the officer ordered Glenn to stop and Glenn eventually complied with the command. Glenn was handcuffed, detained, and placed under arrest for loitering and prowling.

The officer testified his encounter with Glenn was recorded via body camera, and the video was introduced into evidence at the hearing. The officer eventually left the scene to conduct further investigation at the school, but he later returned. Although the videotape does not show when Glenn damaged the police vehicle door, it does show an approximately four-minute interval between the responding officer initially placing Glenn in handcuffs and eventually putting him in the patrol car, and an approximately fifteen-minute interval after Glenn is placed in the police vehicle and when the responding officer leaves the scene. The video further shows an approximately 28-minute interval between when the responding officer left and when he eventually returns to the scene, and the damage occurred in this time frame.

Another officer of the Athens-Clarke County Police Department testified he responded to the location and Glenn was placed in the back seat of a patrol car while the officers waited for the first responding officer to complete his investigation. The second officer testified Glenn complained of being dehydrated and EMS was called to the scene to check on him. The officer testified Glenn sat in the ambulance for several minutes, but when he was asked to exit the ambulance, he resisted by grabbing onto the seatbelt and not letting go. Glenn continued to resist. The officer warned Glenn that if he continued to resist he would use his Taser. The officer

3

explained that once Glenn was placed back in the patrol car, he kicked off the door panel of the driver's side door. The officer stated his rear passenger door was off its hinges and would not close properly. After Glenn was placed in a second patrol car, he began kicking the window of that car as well.

After hearing the evidence, the trial court found the officer lacked sufficient probable cause to arrest Glenn for loitering and prowling. Thus, the officer was not acting in the lawful discharge of his duties when he arrested Glenn. The trial court also found, however, that Glenn violated his probation as to the charge of interference with government property. Based on this new felony offense, the trial court revoked 90 days of Glenn's probation, but suspended the sentence on the condition that Glenn enter and undergo treatment with an accountability court. Thereafter, Glenn petitioned this Court for discretionary review, which we granted. This appeal followed.

Glenn argues the trial court erred by finding he committed the new offense of interference with government property because he was resisting an unlawful arrest and was justified in using force and damaging property as part of his resistance. . We disagree.

"A court may not revoke any part of any probated or suspended sentence unless the defendant admits the violation as alleged or unless the evidence produced at the revocation hearing establishes by a preponderance of the evidence the violation or violations alleged." OCGA § 42-8-34.1 (b). However, "this Court will not interfere with a revocation absent manifest abuse of discretion on the part of the trial court. Accordingly, if admissible evidence is presented in support of the allegations regarding revocation of probation, this Court will affirm." (Citation omitted.) *Summerford v. State*, 316 Ga. App. 201, 202 (728 SE2d 829) (2012). As we have explained, "the quantum of evidence sufficient to justify revocation of probation is less than that necessary to sustain a conviction in the first instance. Only slight evidence is required to authorize revocation." (Citations omitted.) *Christy v. State*, 134 Ga. App. 504, 506 (1) (215 SE2d 267) (1975). With this framework in mind, we turn to Glenn's argument.

"A person commits the offense of interference with government property when he destroys, damages, or defaces government property[.]" OCGA § 16-7-24 (a). Here, several officers testified that Glenn was placed under arrest, physically resisted the officer's attempts to arrest him, and after more than fifteen minutes passed, he damaged the police car door.

5

Glenn contends that the trial court erred because he was justified in using force against the police vehicle in the course of resisting an unlawful arrest. Glenn further argues it is inconsistent to allow a person who is unlawfully arrested to use force against a police officer to resist that unlawful arrest, but not to allow a person who is illegally arrested to use force against property.

"When a defendant claims justification, he admits that he intended to engage in the conduct which constitutes the crime but argues that under the circumstances he was justified in so acting and that he therefore lacked the requisite criminal intent." (Citation and footnote omitted.) *Jackson v. State*, 329 Ga. App. 240, 241-242 (764 SE2d 569) (2014). "The fact that a person's conduct is justified is a defense to prosecution for any crime based on that conduct. The defense of justification can be claimed . . . ," as is relevant here, "[w]hen the person's conduct is justified for any reason under the laws of this state . . . or [i]n all other instances which stand upon the same footing of reason and justice as those enumerated in this article." (Punctuation omitted.) OCGA § 16-3-20 (5)-(6). Furthermore, it is a well-founded principle of law that a person has the right to resist an unlawful arrest "with all force that [is] reasonably necessary to do so." (Citation omitted.) *Ewumi v. State*, 315 Ga. App. 656, 663-664 (1) (b) (727 SE2d 257) (2012).

6

Glenn points out that there is a dearth of case law on the issue of whether an illegally arrested individual is lawfully permitted to use force against property to counter the illegal arrest. Instead, he directs the Court to the case of *Hack v. State*, 168 Ga. App. 927, 930 (6) (311 SE2d 211) (1983), as informative. In *Hack*, the defendant argued that he was illegally arrested, that he had the right to resist, and that his resistance to an unlawful arrest and attempt to escape the police vehicle by kicking the door was self-defense under OCGA § 16-3-21 (a).[1] Id. at 930 (6). This Court held that the defendant was not entitled to a self-defense charge because he was not using force against another person and his resistance did not occur until some time after his alleged unlawful arrest. Id. at 930 (6). Moreover, *Hack* leads to the conclusion that the defendant was not resisting an unlawful arrest. Id.

Here, Glenn argues that *Hack* does not apply because he was *continually* resisting the officer's attempts to unlawfully arrest him and that the vehicle door was damaged during the course of this resistance. As such, Glenn contends he was justified pursuant to OCGA § 16-3-20 (6) to use force against the police vehicle to

---

[1] Pursuant to OCGA § 16-3-21 (a), "[A] person is justified in threatening or using force *against another* when and to the extent that he or she reasonably believes that such threat or force is necessary to defend himself or herself or a third person against such other's imminent use of unlawful force." (Emphasis applied.)

7

further resist an unlawful arrest just as he was authorized to use force against the police officer to resist the unlawful arrest. But we are unconvinced this action constitutes a continuing attempt to resist an unlawful arrest, as Glenn contends, rather than amounting to a new and independent offense for which his probation was revoked. To further his justification argument, Glenn urges this Court to note the timing of his actions in damaging the police vehicle, but it is the very chronology of his actions that is fatal to his argument.

The issue for this Court is whether the defense of justification under the catch-all section of OCGA § 16-3-20 (6) is authorized by the evidence in this case. This is a question of law for which we conduct a de novo review. *Brower v. State*, 298 Ga. App. 699, 702 (1) (680 SE2d 859) (2009). Pretermitting whether a justification defense would be authorized, the evidence here does not support it.

This Court has held that, even under the more general provisions of OCGA § 6-3-21 (6), "in order to stand upon the same footing of reason and justice, a defense of justification under OCGA § 16-3-20 (6) would still have to be premised upon the asserted prevention of imminent use of unlawful force." (Citation and punctuation omitted.) *Hoover v. State*, 198 Ga. App. 481, 482 (4) (402 SE2d 92) (1991). More recently, we have held that "[a] premise underlying all the defenses specified in

8

OCGA § 16-3-20 is that the defendant faced circumstances created by external events that demanded prompt, if not immediate, action." (Citation omitted.) *Brower*, 298 Ga. at 705 (1); see also *Moore v. State*, 234 Ga. App. 332 (506 SE2d 685) (1998) (Defendant's actions were based on his belief that he was in immediate danger of suffocating and that his only option was to kick out the police car's window). Accordingly, we disagree that a justification defense applies to the facts of this case.

A review of the record reveals no evidence to show Glenn had an imminent need to use force against the police vehicle in order to resist his unlawful arrest. Although the videotape does not show the point when Glenn damages the police vehicle door, it does establish that more than fifteen minutes passed after he was placed in the patrol car.

Given this lapse in time, Glenn's damage to the vehicle was not in response to an *immediate* need to resist an unlawful arrest, but rather was an intentional act occurring some time after he was detained. See *Hack*, 168 Ga. App. at 930 (6); *Brower*, 298 Ga. App. at 705 (1). The trial court recognized the lack of imminent need for such use of force against the police vehicle here when it noted:

> If you're in handcuffs, you're sitting there in the car, it doesn't usually
> get better at that point in time to start kicking or to start ripping stuff

9

apart or to start damaging things. . . . [Y]ou'd have a right to come and . . . attack the validity of the arrest or detainment or obstruction charges. But there's just no good legal basis to say that you're now justified to tear up stuff or destroy or damage property.

As such, Glenn has not shown that his reliance on the defense is authorized by the evidence in this case.[2] Based on this evidence, the trial court was authorized to conclude that Glenn violated the terms of his probation by committing the new offense of interference with government property when he kicked and damaged the police vehicle door. Accordingly, we discern no manifest abuse of discretion by the trial court in revoking his probation. *Summerford*, 316 Ga. App. at 202.

*Judgment affirmed. Rickman, J., concurs. McFadden, P. J., dissents.*

* THIS OPINION IS PHYSICAL PRECEDENT ONLY. COURT OF APPEALS RULE 33.2 (a).

---

[2] In a related argument, Glenn appears to suggest that we revisit our holding in *Long v. State*, 261 Ga. App. 478 (583 SE2d 158) (2003), in regard to the justification defense for damage to property. However, based on our holding that Glenn has not shown that his reliance on the defense is authorized by the evidence, we decline to do so.

# In the Court of Appeals of Georgia

A19A0334. GLENN v. THE STATE.

MCFADDEN, Presiding Judge dissenting.

"In Georgia, a person has the right to resist an unlawful arrest" and has the right to resist "with all force necessary for that purpose." *Sidner v. State*, 304 Ga. App. 373, 376 (3) (696 SE2d 398) (2010) (citation and punctuation omitted). The trial court found Glenn's arrest to have been unlawful. The state does not contest that finding on appeal. And the trial court held that Glenn was within that right when he physically resisted arrest, knocking one officer to the ground. The state did not appeal that holding. At issue is the the trial's court holding that Glenn was not within that

right when, in the course of that resistence, he damaged two patrol cars. The majority agrees. I respectfully dissent.

As the majority explains, the question before us is "whether the defense of justification under the catch-all section of OCGA § 16-3-20 (6) is authorized by the evidence of this case." That Code section provides: "The fact that a person's conduct is justified is a defense to prosecution for *any crime* based on that conduct. The defense of justification can be claimed . . . (6) In all other instances which stand upon the same footing of reason and justice as those enumerated in this article." OCGA § 16-3-20 (emphasis supplied).

Because the justification statute provides a defense "for any crime," there is no merit to the state's argument that the statute does not apply because Glenn "was not using force against a person." The majority does not address that argument, correctly rejecting it.

Instead, the majority holds that the "chronology of his actions" is "fatal" to Glenn's justification defense because he did not face an "imminent" threat when he damaged the patrol cars. It is true, as the majority explains, that "[a] premise underlying all the defenses specified in OCGA § 16-3-20 is that the defendant faced circumstances created by external events that demanded prompt, if not immediate,

2

action." *Brower v. State*, 298 Ga. App. 699, 705 (1) (680 SE2d 859) (2009) (citations omitted). And as the majority notes, our cases addressing that statute have often spoken of an "imminent" threat. Id.

But while it is true that the word "imminent" denotes a threat in the immediate future, see Merriam-Webster Dictionary (2019 online edition) (defining "imminent" to mean "ready to take place" and "happening soon"), Glenn clearly did face an imminent threat. He faced immediate and continuing unlawful detention.

This case seems difficult only because Glenn is an unappealing defendant. But we are not adopting a rule for just his case. If Glenn had been a kidnapping victim, a charge of criminal damage to property (OCGA § 16-7-23 (a) (1)) would be so obviously precluded by justification that it is hard to imagine such a charge ever being brought. It could not be seriously argued that kidnapping victims must become compliant once they have been restrained and confined.

From that broader perspective, it is clear that the trial court erred.